UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

**GEOFFREY K. BRETON,**

Plaintiff,

v.,

**TITLEMAX OF DELAWARE, INC.,** and **TRACY YOUNG,**

Defendants.

Civil Action No.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

## Complaint

The defendants in this case are engaged in asset based lending in Pennsylvania at usurious triple digit interest rates. Defendants lent $3,780.57 at **142.47% A.P.R.** secured by his vehicle in Pennsylvania, and are threatening to come to Pennsylvania to repossess his car. Plaintiff is entitled to relief under the Pennsylvania Loan Interest and Protection Law, 41 P.S. § 201 *et seq.*, the Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and avers:

## Parties

1. Plaintiff Geoffery K. Breton is a citizen of Pennsylvania residing at 1234 Cobblestone Lane, Lancaster, PA 17601.

2. Titlemax of Delaware, Inc. ("Titlemax") is a corporate entity believed to be chartered in the state of Delaware with an office at 3401 Kirdwood Highway, Wilmington, DE 19808.

3. Tracy Young is the chief executive officer of Titlemax of Delaware, Inc., and its parent corporation, TMX Finance, LLC ("TMX"). Tracy Young is believed to be the sole shareholder of all Titlemax corporations and directs their activities.

4. Mr. Young has an office at 15 Bull Street, Suite 200, Savannah GA 31401, from which he directs the activities of Titlemax of Delaware, Inc.

5. Mr. Young is in charge of Titlemax of Delaware, Inc., and directs it to make high interest auto title loans to citizens of Pennsylvania.

**Background**

6. Titlemax runs a sophisticated loan sharking operation in which it makes small loans at triple digit rates of interest to consumer borrowers secured by their cars. These loans are used to exploit borrowers with poor credit and a crushing need for cash.

7. As long as a borrower has a car with a clean title as security, Titlemax will make a loan at a triple digit rate of interest without regard for the borrower's ability to repay.

8. Titlemax is engaged in asset based lending in Pennsylvania. For each loan Titlemax makes to a customer in Pennsylvania, Titlemax acquires a

property interest in collateral located in the Commonwealth and records a lien on the collateral with the Pennsylvania Department of Transportation.

9. Titlemax is engaged in asset based lending in Pennsylvania under the direct supervision and control of Mr. Young who has authorized Titlemax to make loans to citizens of Pennsylvania at usurious rates of interest and engage in loan servicing and collection in Pennsylvania.

10. Titlemax admits to having substantial contacts in Pennsylvania.

11. Titlemax admits to entering into over 1,100 asset based loans with Pennsylvania consumers in a recent 18 month period. Exhibit P-1 (Notice of Removal ¶ 24).

12. Titlemax further admits, based on past performance, that it anticipates extracting over $6,600,000 in usurious interest from Pennsylvania consumers over the next 18 months. Exhibit P-1 (Notice of Removal ¶ 25)

13. Titlemax collects defaulted loans by repossessing vehicles. If Titlemax repossesses vehicles for only 10% of its most recent group of 1,100 Pennsylvania borrowers over the next year, that would be 110 repossessions, for an average of one repossession every three days. If Titlemax is repossessing vehicles in Pennsylvania at the average rate of one every three days, Titlemax has a regular and systematic presence in the Commonwealth of Pennsylvania.

14. It is likely that many of the vehicles Titlemax repossesses in Pennsylvania are also stored and sold at automobile auction facilities in Pennsylvania.

15. Titlemax has a presence in Pennsylvania through the use of a mobile application Pennsylvanians can use to monitor their accounts and pay their loans. Exhibit P-2. Mr. Breton used the application.

16. Pennsylvania's usury statute is unwaivable, but Titlemax insists that it can make Pennsylvania borrowers waive the law's protection by having them sign a loan agreement that contains a Delaware choice of law clause. Loan Interest and Protection Law ("LIPL") 41 P.S. § 408 ("***Notwithstanding any other law*** [which includes Delaware law], the provisions of this act may not be waived by any oral or written agreement executed by any person.") (emphasis added).

17. The Delaware choice of law clause is unenforceable. *Kaneff v. Delaware Title Loans, Inc.,* 587 F.3d 616, 624 (3d Cir. 2009) (applying Pennsylvania law to high interest auto title loan from Delaware lender to Pennsylvania borrower); *Gregoria v. Total Assets Recovery, Inc.*, 2015 WL 115501, *5 & n.6 (E.D. Pa. 2015) (following *Kaneff* and applying Pennsylvania law to a Delaware auto title loan at 150% A.P.R.); *Auto Equity Loans v. Baird,* No. N18A-08-001-DCS, at nn. 57 & 63 (Del. Superior Ct., Sept. 20, 2019), *aff'd ,* 232 A.3d 1293 (Del. 2020) (confirming arbitration awards applying Pennsylvania law to high interest auto title loans taken out in Delaware by Pennsylvania borrowers) (available on Fastcase). *See generally*

*Cash America Net v. Commonwealth of Pennsylvania*, 607 Pa. 432, 437-38, 8 A.3d 282, 285-86 (2010) (out of state lenders must observe Pennsylvania usury laws). The Commonwealth of Pennsylvania considers Titlemax to be doing business in Pennsylvania, subject to Pennsylvania law. *Commonwealth of Pennsylvania v. Dominion Management of Delaware, Inc.,* Civil Action No. 181004224 (Phila. CCP, Oct. 19, 2021). Exhibit P-3.

**Facts**

18. Geoffery K. Breton is the owner of a 2012 Honda Civic (the "Vehicle") with a fair market value of about $11,000. Exhibit P-4.

19. The Vehicle was titled, registered, and licensed in Pennsylvania.

20. Mr. Breton keeps the Vehicle at his home in Pennsylvania.

21. Over the summer, Mr. Breton experienced financial hardship as a result of the Covid-19 pandemic. Mr. Breton was behind on bills and needed cash.

22. Mr. Breton has poor credit and was turned down for credit from conventional lenders. As a result of an internet search, Mr. Breton ended up applying for a loan from Titlemax.

23. Mr. Breton first went to Titlemax during or about the month of September 2021. Titlmax told Mr. Breton that they could lend him up to about $6,000. Mr. Breton decided to borrower $2,500, and Titlemax drafted a loan agreement for that amount at or about 142% A.P.R.

24. A few weeks later, Mr. Breton decided to borrower more money and contacted Titlemax by phone from Pennsylvania.

25. On October 1, 2021, Mr. Breton spoke to a Titlemax customer service representative who authorized him to refinance into a new loan for more money and allowed him to electronically sign the new loan agreement on the Titlemax mobile application while Mr. Breton was in East Petersburg, Pennsylvania.

26. A copy of the loan agreement is attached hereto as Exhibit P-4.

27. The amount of the loan increased to $3,780.57. Titlemax applied $2,580.57 to Mr. Breton prior loan and gave him $1,200 in new credit. Exhibit Exhibit P-4.

28. The loan was payable over 36 months with a monthly payment of $469.55. Exhibit P-4. The finance charge was $13,122.15, and Titlemax anticipates receiving a total of $16,802.72 to satisfy the loan over the payment period. Exhibit P-4.

29. The legal rate of interest for an unlicensed lender in Pennsylvania is only 6% per annum. 41 P.S. § 201. At the legal rate of interest, Mr. Breton would owe a finance charge of only $359.87, but Titlemax is seeking to collect 36 times that amount.

30. On October 19, 2021, Mr. Breton sent Titlemax a notice to opt out of the arbitration clause in the loan agreement. Exhibit P-5.

31. At $469.55 per month, the payments on the loan are higher than Mr. Breton can afford.

32. The $13,122.15 in interest Mr. Breton is scheduled to pay on the loan is money Mr. Breton needs for his own living expenses in Pennsylvania for basic necessities for things such as rent, food, clothing, healthcare, transportation, and communications.

33. Titlemax will come to Pennsylvania and repossess Mr. Breton's Vehicle if and when Mr. Breton defaults.

34. Mr. Breton needs his Vehicle for transportation to work, and will suffer substantial and irreparable injury if the Vehicle is repossessed, including loss of income and loss of the ability to support himself.

35. Titlemax recorded a lien for the loan with the Pennsylvania Department of Transportation.

36. Mr. Breton makes payments on the loan from Pennsylvania, over the internet, by phone, or through the Titlemax smartphone application.

**Count I**

37. This count is against Titlemax and Mr. Young for declaratory judgment, injunctive relief, and damages under the Loan Interest and Protection Law ("LIPL"), 41 P.S. §§ 101 *et seq.* All of the preceding paragraphs are incorporated by reference.

38. Mr. Breton asks the court to declare that Pennsylvania law under the LIPL applies to his loan from Titlemax in accordance with the most significant relationship test in the Restatement (Second) of Conflicts of Law ("Restatement"), §§ 6, 187, and 188.

39. Pursuant to section 6(1) of the Restatement (Second) of Conflicts of Law, a court should follow the statutory choice of law directives of the forum state. The LIPL has a statutory directive for the application of Pennsylvania law to loan agreements with Pennsylvania citizens in the anti waiver provision at 41 P.S. § 408 ("Notwithstanding any other law [which includes Delaware law], the provisions of this act [the LIPL] may not be waived by any oral or written agreement executed by any person").

40. Under section 187 of the Restatement, a choice of law clause is unenforceable if the chosen law violates a fundamental policy of the state with the greatest interest in the transaction. *Kaneff v. Delaware Title Loans*, 587 F.3d 616, 621-22 (3d Cir. 2009).

41. Pennsylvania has a materially greater interest than Delaware in the enforcement of its usury laws for the protection of Pennsylvania borrowers because the harm caused by Titlemax's high interest rates occur in Pennsylvania, and not Delaware, including but not limited to:

(a). Depriving Mr. Breton of thousands of dollars of income he needs for support, to pay for housing, food, clothing, medical care, transportation,

and communications; Titlemax wants Mr. Breton to pay $13,122.15 in interest on a $3,780.57 loan, which is clearly money Mr. Breton needs for his own support;

(b). Depriving Pennsylvania merchants of sales revenues from purchases Mr. Breton will be unable to make if he has to pay thousands of dollars in usurious interest to Titlemax that he could otherwise spend in Pennsylvania;

(c). Depriving the Commonwealth of Pennsylvania of sale's tax revenues on commerce that will not take place because Mr. Breton is paying thousands of dollars of usurious interest to Titlemax;

(d). Potentially disrupting Mr. Breton's life by repossessing the vehicle on which he depends for transportation to work, medical care, shopping, and family;

(e). Jeopardizing Mr. Breton's employment and income by potentially repossessing his car and taking away his transportation to work;

(f). Disrupting Mr. Breton's employer in Pennsylvania who depends on him to have reliable transportation to work;

(g). Draining the public fisc of the Commonwealth by causing increased expenditures for unemployment compensation and medical care for Mr. Breton if he become unemployed.

42. The LIPL, 41 P.S. §§ 201 *et seq.*, represents a fundamental policy of the Commonwealth based on the fact that it is unwaivable and violations are subject to criminal penalties. 41 P.S. §§ 408 & 505. The purpose of the LIPL is to

protect Pennsylvania and its consumers from all of the adverse consequences identified above.

43. Delaware has an interest in the success of its corporate citizen, but that interest pales in comparison to Pennsylvania's need to protect its consumers and their families from economic exploitation and financial calamity.

44. Pennsylvania law does not prohibit Titlemax from making loans to Pennsylvania borrowers at commercially reasonable rates of interest that allow for a reasonable rate of return, but lending at 142.47% is exploitative and confiscatory.

WHEREFORE, Mr. Breton asks the court for the following relief:

(a). Declare that Pennsylvania law applies to his loan and that the applicable rate of interest is 6% under 41 P.S. § 201;

(b). Declare that Mr. Breton's monthly payment under Pennsylvania law is $115.01;

(c). Award Mr. Breton actual and treble damages to the extent he has paid more on the loan than required under Pennsylvania law;

(d). Award Mr. Breton actual and treble damages for the loss of his vehicle should it be repossessed together with damages for any loss he might suffer as a consequence of the loss of his vehicle, such as lost income;

(e). An order requiring Mr. Young to remove the lien from the title of Mr. Breton's car upon full payment of the debt calculated at 6% per annom;

(f). Enjoin Titlemax from repossessing Mr. Breton's vehicle to collect usurious interest;

(g). Award attorney's fees and cost; and

(h). Award Mr. Breton any other relief that is just and appropriate.

**Count II**

45. This count is for declaratory judgment and damages against Mr. Young under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C § 1962(2). All of the preceding paragraphs are incorporated by reference.

46. Mr. Young is a person within the meaning of section 1962(c).

47. Titlemax is a corporation which qualifies as an enterprise under section 1962(c). *Cedric Kushner Promotions, LTD., v. Don King*, 533 U.S. 158 (2001).

48. Mr. Young is employed by or associated with Titlemax; specifically he is an owner or officer of Titlemax with authority to direct its activities.

49. Titlemax is engaged in interstate commerce. Specifically, Titlemax is a citizen of Delaware, with an administrative office in Georgia, and makes loans to citizens of Pennsylvania, such as Mr. Breton.

50. Mr. Young conducts the affairs of Titlemax or participates in the affairs of Titlemax through the collection of unlawful debt in violation of 18 U.S.C. § 1962(c).

51. Specifically, Mr. Young directs Titlemax to collect unlawful debt from borrowers who are citizens of Pennsylvania by recording liens on their vehicles with the Pennsylvania Department of Transportation, repossessing vehicles from within Pennsylvania, and coercing Pennsylvanians to pay usurious interest.

52. Titlemax's loan to Mr. Breton constitutes unlawful debt within the meaning of section 1962(c) as the term is defined in section 1961(6). Specifically, (a) almost all of the interest Titlemax collects is unenforceable under the usury laws of Pennsylvania, (b) Titlemax is in the business of making loans to citizens of Pennsylvania at usurious rates of interest, and (c) Titlemax charges interest far in excess of twice the legally enforceable rate in Pennsylvania.

53. Mr. Breton suffered an injury as a result of Mr. Young's conduct at Titlemax. Specifically, Titlemax has signed Mr. Breton up for a loan with an interest rate of 142.47% in which he is potentially liable for $13,122.15 of interest paid according to its terms. Mr. Breton may also be damaged by the repossession of his car.

WHEREFORE, Mr. Breton requests the following relief:

(a). A declaration that Mr. Young is operating Titlemax through the collection of unlawful debt in violation of 18 U.S.C. § 1862(c), by collecting usurious interest from citizens of Pennsylvania;

(b). An award of damages equivalent to three times Mr. Breton's actual damages including but not limited to compensation for funds

wrongfully applied to pay usurious interest, although some of the funds may be set off against any balance due on the loan, if any, and compensation for the loss of his car and other consequential damages if the vehicle is repossessed;

(c). An order requiring Mr. Young to remove the lien from the title to Mr. Breton's car upon full payment of the debt calculated at 6% per annom;

(d). An award of attorney's fees and costs; and

(e). Any other relief that is just and appropriate.

**Count III**

54. Mr. Breton brings this count against Titlemax for violation of the Truth-In-Lending Act, 15 U.S.C. §§ 1601 *et seq.* All of the preceding paragraphs are incorporated by reference.

55. Titlemax electronically disclosed to Mr. Breton an unlawful usurious rate of interest that did not accurately reflect Mr. Breton's legal obligation in violation of 12 C.F.R. §1026.17(c).

56. The Truth In lending disclosures were ineffective because Mr. Breton did not consent to the use of electronic Truth in Lending disclosures in place of written disclosures in accordance with 12 C.F.R. § 1026.17(a)(1) and 15 U.S.C. § 7001(c).

57. The Truth In Lending disclosures were not clear or conspicuous because they were located on the third page of the loan agreement instead of the first page. Exhibit P-4.

WHEREFORE, Mr. Breton requests judgment against Titlemax for actual and statutory damages along with attorney's fees and costs and any other relief that is just and appropriate.

Respectfully submitted,

______________________________

ROBERT P. SALVIN, Esq.,
Counsel for Plaintiff