UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

GEOFFREY BRETON,                        :
      Plaintiff,                       :
                       :
      v.                               :     No. 5:21-cv-05229
                       :
TITLEMAX OF DELAWARE, INC., and    :
TRACY YOUNG,                            :
      Defendants.                      :

_____

**O P I N I O N**
**Defendants' Motion to Dismiss, ECF No. 8 – Granted in part, denied in part**

**Joseph F. Leeson, Jr.**                                    **March 21, 2022**
**United States District Judge**

## I.     INTRODUCTION

This matter involves claims brought by Plaintiff Geoffrey Breton against Defendants

TitleMax of Delaware and Tracy Young, the Chief Executive Officer of TitleMax.  Breton

alleges that TitleMax issued him a loan at an interest rate that violates the Pennsylvania Loan

Interest and Protection Law (LIPL), 41 P.S. §§ 101 *et seq.*  The LIPL prohibits usurious interest

rates and establishes two remedies for relief: a damages claim for unlawful interest already paid,

and the right of a borrower to limit future payments to a lawful rate.  Defendants move to

dismiss.

The question presented by this case is whether the remedies prescribed by the LIPL are

exclusive.  This Court concludes that they are not.  In addition to the remedies provided by the

LIPL, a borrower can also seek declaratory relief to establish his legal obligations under the

contract with respect to the rate of interest he must pay.

II.     **BACKGROUND**

Breton is a Pennsylvania citizen who, in October 2021, refinanced a loan from TitleMax.

*See* Loan Agreement, Ex. 4 to Compl., ECF No. 1-4.  The refinancing was for $3,780.57 and was

secured by a lien on his 2012 Honda Civic.  *See id.*  The loan had an interest rate of 142.7% APR

payable in 36 monthly installments of $469.55 that were scheduled to begin in early November.

*See id.*   Breton has sued TitleMax alleging that it issued the loan at a rate that is usurious under

Pennsylvania law.  Count I of his Complaint seeks declaratory relief to set the interest rate on the

loan to 6% per annum, which is the maximum permitted for unlicensed lenders in Pennsylvania.

41 P.S. § 201.  This Court construes the Complaint as alleging that, prior to its filing in

November 2021, Plaintiff had made no payments on the loan.  *See* Resp. 4, ECF No. 9.[1]

TitleMax moves to dismiss the claim for declaratory relief, arguing that the LIPL's remedy for a

debtor subject to a usurious contract who has not yet made an interest payment is exclusively

limited to the self-help remedy of withholding the excess interest from their payments.  *See* Mot.

6–7, ECF No. 8 (citing 41 P.S. §§ 502, 504).[2]

---

[1]      In Breton's Complaint, he makes the broad allegation that he "makes payments on
the loan from Pennsylvania, over the internet, by phone, or through the TitleMax smartphone
application."  *See* Compl. ¶ 36.  He does not explicitly plead that he made any payments. In his
response to the instant motion to dismiss, Breton confirms that no payments were made prior to
filing of the Complaint, and further represents that TitleMax has since locked him out of the
payment system so that he cannot make a payment at this point.  *See* Resp. 4.

[2]      Defendants also moved to dismiss Count II of the Complaint.  Breton consented
to the dismissal of Count II without prejudice contingent on Breton's ability to pursue discovery
regarding CEO Tracy Young's involvement in TitleMax's Pennsylvania operations.  Without
making any determinations on the scope of discovery at this juncture, Count II of the Complaint
is dismissed without prejudice for the reasons discussed in *Mayo v. TitleMax of Delaware*, No.
CV 21-2964, 2022 WL 62533, *6 (E.D. Pa. Jan. 4, 2022), which asserted the same alleged RICO
violations against Mr. Young.

## III.   LEGAL STANDARD

**Motion to Dismiss – Review of Applicable Law**

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."[3] *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).  The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[3]       District courts have an obligation to construe the pleadings of pro se plaintiffs liberally.  *See Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

IV.     ANALYSIS

TitleMax moves to dismiss Breton's claim for declaratory relief under the LIPL.  In doing so, TitleMax argues that the remedies set forth in the LIPL are exclusive.  Therefore, TitleMax argues, in light of the absence of any provision for declaratory relief in the LIPL, a plaintiff may not seek it.  While TitleMax is correct that the LIPL recognizes two forms of relief, the Act, by its terms, does not preclude other forms of relief.  Accordingly, this Court finds that Breton may seek declaratory relief under the LIPL and further finds that Breton has stated a claim for such relief sufficient to survive TitleMax's motion to dismiss.

A.     **Availability of Declaratory Relief under the LIPL**

The LIPL explicitly recognizes two remedies.  For any prospective payments, it provides a self-help remedy that permits the debtor to withhold interest payments that exceed the maximum interest rate permitted by law.  *See* 41 P.S. § 501.  For any payments that have already been made, the LIPL permits the recovery of triple the amount of excess interest payments collected.  *See* 41 P.S. § 502.  The statute also creates a cause of action, permitting "[a]ny person affected by a violation . . . to bring an action on behalf of [themselves] individually for damages by reason of such conduct or violation."  *See* 41 P.S. § 504.  TitleMax's argument is that § 502 and § 504 must be construed together, with the result that the only claim authorized by § 504 is one "for damages" under § 502.  By its reasoning, because § 501 addresses prospective relief, and because it is a self-help remedy which falls outside the scope of § 504, a borrower has no other avenue through which to pursue prospective relief.

However, TitleMax ignores the savings provision of the statute.  The LIPL explicitly provides that the "remedies and penalties provided in this act shall be *supplementary* to and shall not repeal or otherwise effect the remedies and penalties provided in any other act."  *See* 41 P.S.

§ 507 (emphasis added).  One such remedy is declaratory relief under the Pennsylvania

Declaratory Judgement Act (DJA), 42 Pa. Cons. Stat. §§ 7531 *et seq*.  However, before

consideration of that statute, there is other precedent, not cited by either party, that bears on the

issue here.

The LIPL was passed in 1974.  *See generally* 41 P.S. §§ 101 *et seq.*  The LIPL expressly

repealed the Act of May 28, 1858 (P.L. 622, No. 557), entitled "An act Regulating the Rate of

Interest."  *See* Act of 28 May 1858 § 2, P.L. 622, No. 577.  The relevant remedial provisions of

the 1858 interest rate law and the LIPL are virtually identical, with the 1858 law providing that

"the borrower or debtor shall not be required to pay the creditor over the legal rate, and it shall be

lawful for such borrower or debtor at his option, to retain and deduct such excess from the

amount of any such debt; and in all cases where any borrower or debtor shall . . . have

voluntarily paid the whole debt or sum loaned, together with interest exceeding the lawful rate"

they might bring an action subject to a six-month statute of limitations.  Act of 28 May 1858 § 2,

P.L. 622, No. 577[4].  As to these provisions, The Pennsylvania Supreme Court addressed the bar

against usurious interest in *Mulcahy v. Loftus*, 267 A.2d 872 (Pa. 1970).  There, it implicitly

recognized that declaratory relief may be required, holding that a contract that "called for a

usurious rate of interest . . . [was] not void, but only voidable as to the interest specified beyond

the lawful rate."  *Id.* at 873.  Cases recognizing that usurious contracts are voidable as to interest

in excess of the legal rate, as stated in § 1 of the 1858 law, go back to the 1860s.  *See, e.g.,*

*Greene v. Tyler & Co*., 39 Pa. 361 (1861); *Lebanon Nat. Bank v. Karmany,* 98 Pa. 65 (1881).

---

[4]      The LIPL principally appears to have expanded the debtor's access to remedies:
extending the statute of limitations to four years, § 502, not requiring full payment prior to suit, §
502, creating a triple damages provision, § 502, and adding an attorney's fees provision, § 503.

The Pennsylvania DJA,[5] originally passed in 1923 and reenacted in 1976,[6] grants courts wide latitude to rule on legal relations between parties "whether or not further relief is or could be claimed." *See* 42 Pa. Cons. Stat. § 7532.  Moreover, the Pennsylvania DJA grants parties a cause of action to "[a]ny person interested under a . . . written contract . . . or whose rights . . . are affected by a statute . . . [to] have determined any question of . . . validity arising under the instrument [or] statute . . . and obtain a declaration of rights . . . thereunder." *See id.*  A court may not decline to exercise jurisdiction on the grounds that an alternative remedy exists. *See* § 7537.  In 1976, when the Pennsylvania DJA was reenacted, the General Assembly recognized that "the principle rendering declaratory relief unavailable in circumstances where an action at law or in equity or a special statutory remedy is available has unreasonably limited the availability of declaratory relief." *See id.* § 7541(b).  Thus, the General Assembly declared such principle "hereby abolished" and amended the DJA to provide that the "availability of declaratory relief shall not be limited by" statutory provisions relating to preferring statutory remedies over common law remedies. *See id.*  Accordingly, following this amendment the remedies in the Pennsylvania DJA were to be considered "additional and cumulative to all other available remedies." *See id.*  Given the savings clause in the LIPL and the liberal construction afforded the Pennsylvania DJA, *see id.* § 7541(a), this Court is persuaded that the Pennsylvania DJA provides an appropriate method to have "the interest specified beyond the lawful rate" in a

---

[5]     This Court analyzes the Pennsylvania DJA in relation to the LIPL because the remedies that it provides are part of the same body of state law as the LIPL, and to the extent that the Pennsylvania legislature intended to preclude declaratory relief for imminent violations of the LIPL, that intent will be found in the construction and interaction of the Pennsylvania DJA and the LIPL.  Whether the Pennsylvania DJA or the federal DJA is the appropriate remedial statute is a separate question.

[6]     Uniform Declaratory Judgments Act of 1923 (P.L. 840, No. 321), *reenacted and codified by* Judiciary Act of 1976 (P.L. 586, No. 142).

contract voided through a declaratory judgment. *See Bayada Nurses, Inc. v. Com., Dep't of Lab. & Indus.*, 8 A.3d 866, 876 (Pa. 2010).

For its argument, TitleMax principally relies on *Gary v. Hladik Onorato & Federman, LLP*, No. 2:19-CV-01288, 2020 WL 871330, at *9 (W.D. Pa. Feb. 21, 2020). This Court finds *Gary* unpersuasive.[7]   *Gary* does not address the savings clause set forth in § 507, which preserves remedies derived from statutes outside of the LIPL. Accordingly, Gary does not alter this Court's analysis, and this Court concludes that a plaintiff may seek declaratory relief in an action brought under the LIPL.

### B.      Whether Breton States a Claim for Declaratory Relief

Having determined that Pennsylvania law does not foreclose declaratory relief for violations of the LIPL, the Court must finally determine whether Plaintiff states a claim for declaratory relief. At the outset, Plaintiff has not cited, either in his Complaint or in his response to the present motion, the statutory basis of the Court's jurisdiction over his claims, and it is therefore unclear whether the declaratory relief is sought pursuant to the state or federal statute.[8] However, the Court concludes that under either the Pennsylvania DJA or federal DJA, Breton is entitled to a determination of his legal obligations to pay the interest demanded by the

---

[7]      Factually, *Gary* is also extremely different from the present situation. *Gary* involved an originally legal, 14.9% home equity line of credit secured by a mortgage, with the key instrument passing through numerous assignments over nineteen years before a debt collector attempted to collect on the underlying debt, giving rise to the case. *Id.* at *1–2. Here, there is a well-defined dispute between two parties to a contract.

[8]      There is a jurisdictional issue lurking, as case law interpreting the federal DJA does not make it clear whether a state law claim that does not arise in diversity and only requests declaratory relief can arise under the Court's § 1367 supplemental jurisdiction, and so is subject to either federal or state declaratory remedies, or if it is technically an ancillary remedy to the claims grounded in the Court's federal question jurisdiction, here related to Count III's Truth-in-Lending Act claim, such that the federal declaratory remedy would appear more appropriate. Notwithstanding, this Court is persuaded that jurisdiction would exist regardless of how that issue is framed.

agreement.  Under the Pennsylvania DJA, "[a]n action for declaratory judgment is available to obtain a declaration of the existing legal rights, duties, or status of the parties where the declaration will aid in the determination of a genuine, justiciable controversy." *Redevelopment Auth. of Cambria Cnty. v. Int'l Ins. Co.*, 685 A.2d 581, 585 (Pa. Super. Ct. 1996).  Under the federal DJA, a court has discretionary authority to "declare the rights and other legal relations of any interested party seeking such declaration" where there is "a case of actual controversy within its jurisdiction." *See* 28 U.S.C. § 2201.  The most important principles in determining whether a case or controversy is appropriate for declaratory relief include "the adversity of the interest of the parties, the conclusiveness of the judicial judgment and the practical help, or utility, of that judgment." *See Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990).

According to the allegations of the Complaint, the parties here had entered into a contract for a loan at an interest rate above the maximum legal interest rate set by Pennsylvania law, and TitleMax secured that loan with a lien on Breton's vehicle.  *See* Loan Agreement.  The loan agreement set out terms for repayment which included regular monthly installment payments— which would first be applied to interest—scheduled to begin on November 8, 2021.  *Id.*  Breton filed this action on November 27, 2021, a few weeks after the first payment was due.  By that time, TitleMax would have been entitled to a late payment penalty and a declaration of default. *See id.*  Although the LIPL granted Breton the right to withhold excess interest payments, he could not be certain that TitleMax would refrain from charging him late fees or repossessing his vehicle if he invoked that right.  TitleMax has consistently taken the position in both this Court and other courts in this circuit that loans with identical terms made with Pennsylvania citizens are governed by Delaware law and not Pennsylvania law as to interest rates.  *See, e.g.*, *TitleMax of Delaware, Inc. v. Weissmann*, 24 F.4th 230 (3d Cir. 2022); *Mayo v. TitleMax of Delaware*,

No. CV 21-2964, 2022 WL 62533 (E.D. Pa. Jan. 4, 2022).  It could take the same position here.

For these reasons, this Court concludes that a genuine, justiciable controversy existed between

Breton and TitleMax at the time of filing, regarding Breton's obligation to pay interest rates in

excess of Pennsylvania's legally permitted rate, and that a judicial declaration regarding those

obligations will likely prove conclusive and useful in resolving the parties' obligations under the

agreement going forward.  Accordingly, Breton has stated a sufficient claim for declaratory relief

under the LIPL, and TitleMax's motion to dismiss is denied.

## V.        CONCLUSION

Breton has stated a cognizable claim for declaratory relief under the LIPL, and

accordingly, Defendant TitleMax's motion to dismiss Count I of the Complaint is denied.

Additionally, Breton has consented to the dismissal of Count II of the Complaint, and Count II is

dismissed without prejudice.

A separate Order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge